UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
KENNETH ROBINSON,

Plaintiff,

-against-

EX PARTE PART 72/SUPREME COURT PART 66, GLADYS GUERRERO-AQUINO, MR. ANIBAL FLORES, HON. JUSTICE RICHARD VELASQUEZ, CITIZENS BANK, N.A., PORTFOLIO RECOVERY ASSOCIATES LLC, and RUBIN & ROTHMAN, LLC,

Defendants.
---------------------------------------------------------x

**MEMORANDUM AND ORDER**

26-CV-5924 (OEM) (CHK)

ORELIA E. MERCHANT, United States District Judge:

On September 24, 2026, plaintiff Kenneth Robinson ("Plaintiff"), proceeding pro se, filed the above-captioned, fee-paid civil action seeking federal court intervention in a civil proceeding in the Supreme Court of the State of New York, County of Kings. *See generally* Complaint, Dkt. 1 ("Complaint" or "Compl."). For the following reasons, the Complaint is dismissed, *sua sponte*, and without prejudice.

**BACKGROUND**

Plaintiff's Complaint arises out of a lawsuit that he filed in the Supreme Court of the State of New York, County of Kings, under Index Nos. 410-2026 and CV-100332-26. *Id* at 2. The Complaint does not identify the underlying cause of action or clearly describe the course or outcome of those proceedings. *See generally id.* Instead, Plaintiff alleges a conspiracy between the New York state court system and "predatory financial institutions." *Id.* at 2. He alleges that Defendants blocked his receipt of unspecified accommodations under the Americans with Disabilities Act ("ADA"), incorrectly logged appearances, "engineered scheduling collisions," and

improperly recorded a hearing. *Id.* at 7-8.

Plaintiff alleges that Defendant Rubin & Rothman, LLC demanded that he comply with the New York State Courts Electronic Filing ("NYSCEF") requirements, and that court staff "demand[ed] that litigants register as online portal users, forcing unrepresented parties into digital environments where proprietary 'Escape Hatches' can be weaponized against them." *Id.* at 9-10, 15. Plaintiff asserts that the technology available to litigants at the state court "relies on archaic, glitchy computer terminals equipped with box monitors (where frequently only one barely functions)," *id.* at 16, and that, "[b]y refusing to be pushed into and blindly surrender to electronic portal gauntlet … Plaintiff maintained strict control and reserved all rights to operate nimbly and on[] his own authentic standing, accountability and individual initiative." *Id.* at 11.

Additionally, Plaintiff alleges that he requested a reasonable accommodation for his documented "severe anxiety disorder directly triggered by high-stakes, unaccommodated impromptu oral demands and real-time verbal traps." *Id.* at 12. According to Plaintiff, he provided sensitive health data to the court, but the judicial Defendants "weaponized this private data" by posting it on the public docket. *Id.*

Plaintiff alleges that the state court Defendants maintained "operational chaos" by failing to notify him of a May 13, 2026 return date until after the deadline, thereby causing a default. *Id.* at 14. When new return dates were set, Defendant Justice Richard Velasquez ("Justice Velasquez") "aggressively refus[ed] to adjust despite Plaintiff's immediate verbal objections." *Id.* At a rescheduled hearing on August 5, 2026, Defendants Citizens Bank, N.A. and Rubin & Rothman, LLC, failed to appear, *id.* at 13, and Plaintiff alleges that Justice Velasquez nevertheless "issued a wildly unaccommodated, procedurally flawed denial designed to trap Plaintiff." *Id.* Plaintiff also describes a September 10, 2026 "ghost hearing," at which judicial

officers allegedly "suppress[ed] Plaintiff's formal objections, record[ed] false appearances, and ignore[ed] unaddressed ADA protections while physical courtroom doors falsely indicated active representation by outside counsel." *Id.*

Separate from the court proceedings, Plaintiff alleges that "Synchronized Surveillance" occurred on September 18, 2026, when his residential camera system recorded the arrival of a black SUV "parking directly outside Plaintiff's residence boundary . . . without a vehicle occupant ingress or egress across many consecutive days." *Id.* at 16. Plaintiff further alleges "Postal Metration Discrepancies [sic]" involving three envelopes that arrived at this residence on September 21, 2026, either "without official USPS cancellation postmarks" or "exhibiting unexplained transit lag and mail routing irregularities." *Id.* at 17. Plaintiff states that two of the envelopes were from Defendant Rubin & Rothman, LLC, and that his residential camera system recorded individuals passing his property line on the same date. *Id.*

## LEGAL STANDARDS

Courts are required to give special consideration to pro se litigants who represent themselves in court without an attorney. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This means that their pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *See id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court must read a pro se complaint "liberally" and consider "the strongest [arguments] that it suggests." *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475, 474 (2d Cir.2006)). If a liberal reading indicates that "a valid claim might be stated," the Court should give the pro se plaintiff an opportunity to amend their complaint. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000).

Nonetheless, a complaint must plead "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Regardless of whether a plaintiff has paid the filing fee, a federal district court has the inherent power to dismiss a case, *sua sponte*, if it determines that the action is frivolous or the court lacks subject-matter jurisdiction over the matter. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363–64 (2d Cir. 2000). An action is frivolous as a matter of law when, *inter alia*, it is "based on an indisputably meritless legal theory" —that is, when it "lacks an arguable basis in law … or [when] a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). Thus, "[a] complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (per curiam) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

Factual frivolousness presents a separate inquiry. Even sufficiently pleaded allegations may be dismissed as frivolous if they are "'clearly baseless'—that is, if they are 'fanciful,' 'fantastic,' or 'delusional.'" *Tessema v. Env't Prot. Agency*, 1:20-cv-9700-MKV, 2021 WL 2666855, at *3 (S.D.N.Y. June 29, 2021) (quoting *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011)). As the Supreme Court has explained, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S.

25, 33 (1992).

To hear a case, a federal court must also have subject-matter jurisdiction over the action. *See Kulisz v. Raga*, 25-CV-4893 (OEM)(PK), 2026 WL 772669, at *5 (E.D.N.Y. Mar. 19, 2026). "If the Court 'determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.'" *Id.* (quoting Fed. R. Civ. P. 12(h)(3); *accord*, *Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010)). There are two types of federal subject-matter jurisdiction: (1) federal question jurisdiction and (2) diversity jurisdiction. Federal question jurisdiction extends to claims arising under federal law. *See* 28 U.S.C. § 1331. Diversity jurisdiction generally requires an amount in controversy exceeding $75,000, and that all of the defendants are citizens of a different state than the plaintiff(s). *See* 28 U.S.C. § 1332. If the court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see Chestnut v. Wells Fargo Bank, N.A.,* 11-CV-5369 (JS)(ARL), 2012 WL 1657362, at *3 (E.D.N.Y. May 7, 2012) ("Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject-matter jurisdiction is lacking.").

**DISCUSSION**

Plaintiff alleges that Defendants conspired with "predatory financial institutions" and that their conduct "triggers criminal complicity and misprision liability under 18 U.S.C. §§ 3 and 4." Compl. at 2, 5–6, 18–19. He also invokes 42 U.S.C. § 1983 and Title II of the ADA. *Id.* at 6, 17–18. Plaintiff seeks monetary damages, declaratory and injunctive relief affecting state court docketing and decisions, and systemic changes to and oversight of state court procedures. *Id.* at 19–21. Plaintiff further seeks to enjoin Defendants "from engaging in coordinated physical surveillance, intimidation, or interference near Plaintiff's residence." *Id.* at 19–20. These

requests implicate distinct jurisdictional, immunity, and pleading issues, which the Court addresses in turn.

**A. Intervention in State Court Proceedings**

To the extent Plaintiff asks this Court to review and overturn prior state court judgments, this Court lacks jurisdiction to do so. The *Rooker-Feldman* doctrine "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). It applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Plaintiff appears to have lost in state court and is now asking the federal district court to review and reject the civil judgment.[1] This Court does not have jurisdiction to enjoin the state court proceedings, direct changes in dockets, decisions, or otherwise intervene in matters that were already decided by the state court. *See Bridgewater Operating Corp. v. Feldstein,* 346 F.3d 27, 28 (2d Cir. 2003) (The "'*Rooker–Feldman* doctrine' provides that, because only United States Supreme Court may review final decision of the state court, federal district courts do not have jurisdiction over claims that have already been decided, or that are 'inextricably intertwined' with issues that have already been decided, by state court."); *Komatsu v. City of New York*, 20-CV-10942 (VEC), 2021 WL 1590205, at *3 (S.D.N.Y. Apr. 23, 2021) ("Federal courts are not

[1] Plaintiff implies but does not confirm that a default judgment was entered against him. *See* Compl. at 14. If the state court proceedings are currently ongoing, federal intervention is foreclosed by the *Younger* abstention doctrine, which requires federal courts to abstain from enjoining pending state court proceedings in certain contexts. *See generally Younger v. Harris*, 401 U.S. 37 (1971); *see also Jacob Hoffman Brewing Co. v. McElligott*, 259 F. 525, 530 (2d Cir. 1919) ("[T]he federal court cannot, of course, interfere in a case where the proceedings were already pending in a state court.").

empowered to second-guess state court matters and the federal court does not have jurisdiction to order state courts to take particular actions.").

Furthermore, Plaintiff's request to restrain state court proceedings also implicates the Anti-Injunction Act, 28 U.S.C. § 2283. That statute provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. When no exception applies, the Act operates as "an absolute prohibition against any injunction of any state-court proceedings." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977). Here, Plaintiff specifically asks this Court to enjoin the state court from enforcing its orders and managing its docket. *See* Compl. at 19. To the extent that relief would stay state court proceedings, it is prohibited.

**B. Judicial and State Sovereign Immunity**

Plaintiff's claims for damages against the judicial officers and clerks for their judicial acts appear to be barred by absolute judicial immunity. "Judges have absolute immunity from suits and damages arising out of judicial acts performed in their judicial capacities." *Bodden v. Queens Cnty. State Sup. Ct. Crim. Div. Just. Morris*, 25-cv-05145 (NCM)(VMS), 2026 WL 205933, at *2 (E.D.N.Y. Jan. 27, 2026) (citing *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020)). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "Under the doctrine of absolute judicial immunity, judges are subject to suit only for (1) 'non-judicial actions, *i.e.*, actions not taken in the judge's judicial capacity,' or (2) 'actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" *Kapsis v. Brandveen*, 09-01352(JS)(AKT), 2009 WL 2182609, at *1 (E.D.N.Y. July 20, 2009) (internal quotation marks omitted). Judicial immunity

"is not overcome by allegations of bad faith or malice," and a judge is not "deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Mireles*, 502 U.S. at 11, 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).

Absolute judicial immunity also extends to court clerks performing tasks "which are judicial in nature and an integral part of the judicial process." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997); *see also McKnight v. Middleton,* 699 F. Supp. 2d 507, 525 (E.D.N.Y. 2010) ("[A] clerk's acts that implement judicial decisions or that are performed at the direction or under the supervision of a judicial officer come under the ambit of judicial immunity."); *see also Pikulin v. Gonzales,* 07-CV-0412 (CBA), 2007 WL 1063353, at *2 (E.D.N.Y. Apr. 5, 2007) (finding that absolute judicial immunity extends to "the Clerk's Office activities of filing and docketing legal documents . . . "). A "court's inherent power to control its docket is part of its function of resolving disputes between parties" and therefore is "a function for which judges and their supporting staff are afforded absolute immunity." *Rodriguez*, 116 F.3d at 66.

Here, Plaintiff challenges Justice Velasquez's rulings, scheduling decisions, and conducting of hearings, as well as court clerks Gladys Guerrero-Aquino's and Anibal Flores' handling of filings and docket entries. *See* Compl. at 7-8. As pleaded, those allegations concern judicial decisions and tasks integral to managing the state court case. Plaintiff does not allege facts showing that Justice Velasquez acted in the complete absence of jurisdiction or that the clerks' challenged docketing activities fell outside the judicial process. His characterization of those acts as deliberately improper or conspiratorial does not, by itself, overcome immunity. *See Mireles*, 502 U.S. at 11, 13. Accordingly, the damages claims arising from those acts appear subject to dismissal as frivolous. *See Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019) ("Because [the defendant, a state-court judge,] was . . . clearly entitled to judicial immunity, the

district court did not err in *sua sponte* dismissing the claims against her as frivolous."); *Koger v. Richardson*, 19 Civ. 9053 (ER), 2019 WL 5080008, at *2 (S.D.N.Y. Oct. 10, 2019) (dismissing a fee-paid pro se complaint against two judges because "the law is so clear with respect to judicial immunity").

Moreover, Plaintiff's claims against the New York Supreme Court and state officials acting on its behalf also raise state sovereign immunity concerns. "State immunity extends to state agencies and to state officers who act on behalf of the state." *Burnette v. Carothers*, 192 F.3d 52, 57 (2d Cir. 1999). "Absent valid abrogation or express waiver of State sovereign immunity, the Eleventh Amendment bars actions in federal courts asserted directly against a state and against state agencies that act as arms of the state." *Harris v. New York State Educ. Dep't*, 419 F. Supp. 2d 530, 533 (S.D.N.Y. 2006).

**C. ADA Claims**

Even if the judicial officers were not immune from suit, Plaintiff has failed to state a claim establishing that these public officials violated his rights under the ADA. Plaintiff asserts that the judges and clerks at the Kings County Supreme Court violated Title II of the ADA by failing to provide reasonable accommodations. *See* Compl. at 7, 13. Title II provides, in relevant part, that: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim, a plaintiff must plead facts showing that "(1) he is a qualified individual with a disability; (2) the defendant is a public entity subject to the acts; and (3) [he] was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or the [defendant] otherwise discriminated against him [because of] his disability." *Wright v. New York State Dep't*

*of Corr.*, 831 F.3d 64, 72 n.4 (2d Cir. 2016). Title II seeks to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

One form of disability discrimination is the refusal to afford a reasonable accommodation. *See Davis v. Shah,* 821 F.3d 231, 260 (2d Cir. 2016). The ADA requires "'reasonable accommodations' that permit [qualified individuals] to have access to and take a meaningful part in public services." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004). It does not, however, require "every accommodation … request[ed]." *See Gronne v. Apple Bank for Sav.*, 1 F. App'x 64, 67 (2d Cir. 2001) (quoting *Fink v. New York City Dep't of Pers.*, 53 F.3d 565, 567 (2d Cir. 1995)). "An accommodation is not reasonable if it would impose an undue hardship on a program's operation or would fundamentally alter the nature of the service, program, or activity." *McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) (internal quotation marks omitted). As the Supreme Court explained, "Title II does not require States to employ any and all means to make judicial services accessible [to persons with disabilities] . . . [i]t requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service." *Tennessee v. Lane*, 541 U.S. 509, 511 (2004).

Here, assuming for purposes of this Order that Plaintiff is a qualified individual with a disability, the Complaint does not provide enough facts to assess a denial-of-accommodation claim. Plaintiff identifies a "severe anxiety disorder" triggered by "high-stakes, unaccommodated impromptu oral demands and real-time verbal traps," and states that he requested a reasonable accommodation. Compl. at 12. But he does not identify the particular accommodation requested, when and to whom he made the request, or how the request was resolved. Without

that information, the Court cannot determine what modification was sought, whether it was reasonable, or how its denial impaired Plaintiff's meaningful access to judicial services. Plaintiff's allegations that Defendants "weaponized . . . private data," maintained "operational chaos," and scheduled return dates over his objections likewise do not explain how the challenged conduct denied him access because of his disability. *Id.* at 12, 14. His allegation that the court "forc[ed] unrepresented parties into digital environments" describes a burden on unrepresented litigants generally but does not explain what disability-related barrier he encountered or what modification he sought. *Id.* at 15. None of these allegations suggest discrimination on the basis of disability. Accordingly, Plaintiff's ADA claim appears to be "based on an indisputably meritless legal theory," and thus, frivolous. *Livingston*, 141 F.3d at 437.

**D. Civil Rights Claims**

Plaintiff alleges that his civil rights were violated under 42 U.S.C. § 1983, because "Defendants conspired to utilize sham proceedings, false mask representations, proxy-swapping, mail fraud maneuvers, coordinated physical surveillance intimidation, and the intentional public exposure of medical records to punish Plaintiff for exercising his right to a clean, public record and uncompromised due process." Compl. at 18.

"To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Killoran ex rel. A.K. v. Westhampton Beach Sch. Dist.*, 18-cv-3389 (JS)(SIL), 2020 WL 1325572, at *10 (E.D.N.Y. Feb. 12, 2020), report and recommendation adopted sub nom. *Killoran v. Westhampton Beach Sch. Dist.*, 2:18-cv-03389, 2020 WL 1433647 (E.D.N.Y. Mar. 11, 2020) (internal quotation marks omitted) (citing 42 U.S.C. § 1983). Plaintiff's allegations do not supply facts supporting a constitutional violation or a

coordinated plan among Defendants. *See Iqbal*, 556 U.S. at 678. The Complaint must contain factual content permitting a reasonable inference that a particular Defendant is liable for the misconduct alleged. *See Matson*, 631 F.3d at 63.

Plaintiff may not have intended for his medical records to become a part of the public record after he submitted them to the court, but he has not alleged the circumstances of the disclosure, or how those circumstances support the asserted constitutional violation. Additionally, the allegations concerning surveillance present a similar gap. Plaintiff alleges that "Synchronized Surveillance" occurred on September 18, 2026, when his residential camera system recorded the arrival of a vehicle that remained parked and unoccupied near Plaintiff's home "across many consecutive days." Compl. at 16. He has not linked this vehicle to any of the Defendants or suggested how the proximity of a parked and unoccupied vehicle violated his rights. Similarly, Plaintiff's claim of "mail fraud" appears to be based on the receipt of three envelopes with imprecise postal information that arrived on September 21, 2026, the same date that his residential camera system recorded individuals passing his property line. Compl. at 17. These factual allegations do not suggest "mail fraud" or any violation of Plaintiff's constitutional rights. Plaintiff does not explain how missing postmarks, transit delays, or routing irregularities establish "mail fraud" or a constitutional violation. *See id.* Additionally, the coincidence in timing, without further factual allegations, does not plausibly establish the asserted conspiracy.

**E. Criminal Code**

Finally, Plaintiff purports to bring claims based on the alleged violation of 18 U.S.C. § 4, which covers the federal crime of misprision of felony. *See* Compl. at 5-6, 18-19. However, Plaintiff fails to identify any federal felony committed or concealed by any of the Defendants. Moreover, violations of the criminal code may not serve as the basis for a civil cause of action

unless the criminal statute includes an express or implied private right of action. *See Cort v. Ash*, 422 U.S. 66, 79 (1975) (providing that no private right of action exists under criminal statutes unless there is a clear statutory basis for such an inference); *see also Leeke v. Timmerman,* 454 U.S. 83, 85 (1981) (stating that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.") (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Plaintiff has not established that 18 U.S.C. § 4 includes an express or implied private civil cause of action. *See Massad v. Greaves*, 554 F. Supp. 2d 163, 167 (D. Conn. 2008) (finding that 18 U.S.C. § 4 does not include an express or implied civil cause of action).

**CONCLUSION**

For the foregoing reasons, the Complaint is dismissed, *sua sponte*, and without prejudice, for lack of subject-matter jurisdiction and as frivolous. The Clerk of Court is directed to mail a copy of this Order to Plaintiff and note the mailing on the docket.

SO ORDERED.

*/s/*
ORELIA E. MERCHANT
United States District Judge

November 13, 2026
Brooklyn, New York